Neama Rahmani (State Bar No. 223819)
   *efilings@westcoasttriallawyers.com*
Ronald L. Zambrano (State Bar No. 255613)
   *ron@westcoasttriallawyers.com*
WEST COAST EMPLOYMENT LAWYERS, APLC
350 South Grand Avenue, Suite 3350
Los Angeles, California 90071
Telephone: (213) 927-3700
Facsimile: (213) 927-3701

Attorneys for Plaintiff
CHARLES PELL

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES PELL,<br><br>              Plaintiff;<br><br>      vs.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, MERRICK GARLAND, in his official capacity as Attorney General of the United States, and DOES 1 through 10, inclusive,<br><br>              Defendants | Case No.: 21-CV-5945-SB-PVC<br><br>**FIRST AMENDED COMPLAINT**<br><br>1)  DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964; AND<br><br>2)  RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964<br><br>**DEMAND FOR JURY TRIAL** |

        COMES NOW the Plaintiff, CHARLES PELL (who hereinafter shall be referred to as the "Plaintiff" or as "PELL"), who hereby alleges the following:

//

//

## **INTRODUCTION**

1. This case is about discrimination in the absolutely last place it should ever exist – in a federal prosecutors' office responsible for deciding whom to investigate, charge, and imprison, and in one of the most diverse areas of the nation – Los Angeles, California.

2. Plaintiff Charles Pell has been a federal criminal prosecutor for the United States Department of Justice ("DOJ") for more than 15 years, where he focuses on investigating and charging complex criminal frauds, obtaining restitution for crime victims, and securing forfeiture of criminally derived proceeds. In 2015, Plaintiff received the CLAY award (California Lawyer Attorney of the Year) in criminal practice. For the time period relevant to this lawsuit, 2018-2020, as an Assistant United States Attorney ("AUSA") for the United States Attorney's Office for the Central District of California ("USAO-CDCA"), Plaintiff charged an average of more than 15 cases and 20 defendants per year, which makes him one of the most productive AUSAs in the entire USAO-CDCA, particularly because many of the cases Plaintiff investigated, charged, and resolved involved complex subject matters.

3. Unfortunately, despite Plaintiff's sustained and objectively outstanding performance as an AUSA in the USAO-CDCA, some of Plaintiff's supervisors and managers in the USAO-CDCA retaliated against Plaintiff for exercising his rights under 42 U.S.C. § 2000e-3, because Plaintiff: (1) spoke out against discrimination the USAO-CDCA was exhibiting towards a Hispanic female AUSA; (2) lodged a written complaint about racist statements made by USAO-CDCA managers – including by Chief AUSA Stephanie Christensen and former Criminal Chief AUSA Brandon Fox – about African-American USAO-CDCA employees in 2018 and 2019; (3) filed a formal complaint of discrimination and retaliation against USAO-CDCA supervisors; and (4) participated in a "Racial Justice & Equity" working group with other USAO-CDCA AUSAs.

//

4.  Those same USAO-CDCA supervisors and managers also discriminated against Plaintiff based upon his associations with persons of color and females, including his partner, who is a Hispanic (Chicana) female, and his mixed-race biological son, as well as Plaintiff's associations with Black and Hispanic female AUSAs in the USAO-CDCA.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction under 28 U.S.C. § 1331 as Plaintiff seeks redress for violations arising under Section 717 of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-16; and 29 C.F.R. §§ 1614.101 (a) & (b).

6.  Prior to this complaint, Plaintiff obtained a Final Agency Decision from the Department of Justice.

7.  Venue is proper in this judicial district by virtue of 28 U.S.C. § 1391 because, among other things, a substantial part of the acts or omissions complained of occurred in this judicial district and because one or more of the defendants reside in this judicial district.

## PLAINTIFF

8.  At all times herein mentioned, Plaintiff Charles Pell was a resident of the Central District of California, including in the Counties of Los Angeles and Orange, California.

## DEFENDANTS

9.  Defendant UNITED STATES DEPARTMENT OF JUSTICE (hereinafter referred to as "DOJ") is and at all times herein mentioned was a federal agency of the United States

with the capacity to sue and to be sued, with a principal place of business located at 312 N. Spring Street, Los Angeles, California 90012.  Defendant MERRICK GARLAND is the Attorney General of the United States and sued in his official capacity as the head of the DOJ.

10. Plaintiff is informed and believes and thereon alleges that each of the Defendants herein were at all times the agent, employee, or representative of each remaining Defendant and were at all times herein acting within and outside the scope and purpose of said agency and employment.  Plaintiff further alleges that as to each Defendant, whether named, or referred to as a fictitious name, said Defendants supervised, ratified, controlled, acquiesced in, adopted, directed, substantially participated in, and/or approved the acts, errors, or omissions, of each remaining Defendant.

11. The true names and capacities of the Defendants named herein as DOES 1 through 10, inclusive, whether individual, corporate, partnership, association, or otherwise, are unknown to Plaintiff who therefore sues these Defendants by such fictitious names. Plaintiff will request leave of court to amend this Complaint to allege their true names and capacities at such time as they are ascertained.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. Prior to filing this complaint, Plaintiff has exhausted all administrative remedies by timely initiating a complaint of discrimination with the Equal Opportunity Office of the Department of Justice (Complaint No. 2001-01028) and obtaining a Final Agency Decision dated April 27, 2021.

//
//

## **FACTUAL ALLEGATIONS**

13. Plaintiff, whose partner is Hispanic and whose child is mixed-race, has been a federal prosecutor with the U.S. Department of Justice since 2005. Since 2011, Plaintiff has been assigned to the USAO-CDCA's Santa Ana Branch Office.

14. Prior to 2019, Plaintiff consistently received "Outstanding" ratings in his annual performance reviews.

15. Beginning in January 2019, Plaintiff's first-line supervisor was AUSA Daniel Ahn. Beginning in June 2019, Plaintiff's second-line supervisor was AUSA Benjamin Barron.

16. Over the course of his employment with USAO-CDCA, Plaintiff was discriminated against by former AUSA Brandon Fox (former Criminal Division Chief AUSA), AUSA Scott Garringer (former Criminal Division Deputy Chief AUSA [currently, Criminal Division Chief AUSA]), Nicola Hanna (former United States Attorney), AUSA Tracy Wilkison (former First AUSA [currently, acting United States Attorney]), and AUSA Barron for reprisal for speaking out against the retaliatory practices the Department was exhibiting towards a Hispanic female AUSA ("former Latina AUSA#1") and discrimination against Plaintiff for having a Hispanic partner and mixed-race biological son, and his associations with former Latina AUSA#1 and a current Black female AUSA ("current Black female AUSA#1").

17. Plaintiff is informed and believes all managers identified above knew about his Latina partner and his mixed-race biological son because beginning in 2015 (when his son was born), Plaintiff would routinely send Christmas cards of his family to USAO-CDCA managers and other USAO-CDCA employees and post them and other family pictures outside his office. Plaintiff also had discussions with multiple USAO-CDCA managers

that referenced that his significant other was Latina and his biological son was mixed-race, specifically including in-person with former AUSA Fox and AUSA Barron in 2019.

18. Additionally, Plaintiff aided former Latina AUSA#1 multiple times in 2018 as well as when she was "verbally and in writing attacked and discriminated against" by AUSA Garringer.

19. Plaintiff verbally admonished AUSA Garringer for wrongfully attacking former Latina AUSA#1 regarding work-related matters, and Plaintiff continued to work on cases with former Latina AUSA#1 during this time to combat the unlawful discrimination against her. Those harsh attacks by AUSA Garringer included using racial tropes to describe former Latina AUSA#1 and her work, including deriding her investigative work as "shoddy," insulting her written product as "below GC" quality (General Crimes is where newly hired AUSAs are assigned), claiming that former Latina AUSA#1 could not even comprehend or "understand" the reasons why AUSA Garringer was asking her certain questions about investigations, and insinuating former Latina AUSA#1 was lazy by asserting lack of required preparation to properly charge cases. The substance of AUSA Garringer's attacks on former Latina AUSA#1 were false. Garringer's proffered complaints were pretext for AUSA Garringer to assert that former Latina AUSA#1 was "lazy and stupid," common racial tropes directed at Hispanics – and particularly towards Hispanic females.

20. During an in-person meeting in August 2018, Plaintiff notified former U.S. Attorney Hanna about Plaintiff's opposition to AUSA Garringer's inappropriate actions against former Latina AUSA#1. During an in-person meeting in summer 2019, Plaintiff notified Santa Ana Branch Office Chief AUSA Barron of same. Prior to and through early 2019, Plaintiff had also notified the previous Santa Ana Branch Office Chief AUSA about AUSA Garringer's inappropriate actions against former Latina AUSA#1.

21. Plaintiff also advocated for former Latina AUSA#1 during her judicial appointment processes in 2018, 2019, and 2020. Plaintiff is informed and believes that during former Latina AUSA#1's judicial appointment processes, USAO-CDCA managers made false statements about former Latina AUSA#1's performance, which Plaintiff opposed and corrected when he was contacted about former Latina AUSA#1.

22. Plaintiff raised his concerns regarding AUSA Garringer's discriminatory treatment of former Latina AUSA#1 directly with former U.S. Attorney Hanna, AUSA Barron, and other USAO-CDCA managers. Moreover, Plaintiff is informed and believes others complained about AUSA Garringer's inappropriate treatment of former Latina AUSA#1.

23. During 2019, several officials in the USAO-CDCA who were of minority descent or females were replaced with younger, white males. Specifically, in or about May 2019, the "front office" management of the USAO-CDCA – which is based in the City and County of Los Angeles – became all white.   That included forcing out the long serving and universally respected Criminal Chief AUSA (who had tried the Rodney King federal prosecution), who is Black, and replacing him with former AUSA Fox, a white male. (Plaintiff is informed and believes AUSA Garringer had also made complaints and false statements about that former Criminal Chief AUSA's performance.)  Around this time, USAO-CDCA continued to face multiple allegations of unlawful discrimination against minority and/or female AUSAs in the USAO-CDCA's Los Angeles office, including non-white and female AUSAs being denied promotion or receiving less-desirable assignments compared to white male AUSAs, who feared retaliation from USAO-CDCA management if they complained about this disparate treatment.

24. In June 2019, former U.S. Attorney Hanna and former AUSA Fox appointed a white male (AUSA Barron) as Chief AUSA of the Santa Ana Branch; a position previously occupied

by a minority female AUSA for several years, passing over more experienced minority and female supervisors with more tenure at the Santa Ana Branch who had applied.

25. Before AUSA Barron's appointment as Santa Ana Chief, Plaintiff's mid-year review for 2019 contained no negative issues.

26. In or around February 2020, AUSA Ahn emailed AUSA Barron the proposed ratings for Plaintiff's 2019 PAR, which recommended rating Plaintiff "Outstanding" overall and in all six rating elements and provided AUSA Barron with a two-page 2019 PAR addendum that summarized each rating element for Plaintiff by including a paragraph or two for each.

   a. That 2019 PAR Addendum write-up for Plaintiff's "Case Handling" element submitted by Plaintiff's direct supervisor AUSA Ahn provided in its entirety:

      i. "Charles's case handling in 2019 was outstanding. In 2019, he was among our office's most productive charging AUSAs, bringing nine cases involving eleven defendants. During the same time, he handled his other investigations and post-indictment matters, including a complex and contested sentencing against a birth tourism operator.

      ii. Notably, Charles did not sacrifice complexity for efficiency. Charles's cases are among the most complex in our district. For example, he commenced a precedent-setting series of cases targeting birth tourism, brought multiple high-impact SIRF indictments, and charged a fraudster with selling forged celebrity and sports memorabilia. Charles's efficiency in charging complex matters speaks to his outstanding case handling abilities.

      iii. In light of Charles's heavy docket of complex cases, other cases on the docket may not have moved as quickly as perhaps they otherwise could.

While Charles's case handling is and remains outstanding, we would like to encourage Charles to devote his considerable abilities and talents to moving those cases that have been on his docket for over three years.

    iv.  Charles is a dedicated prosecutor who prosecutes his cases with an exceedingly high level of competence and thoroughness. He has an incredible work ethic. The quality of his work is consistently strong. He exercises good judgment in resolving cases and ensures that his case dispositions are sound and fair."

  b.  The proposed Addendum write-up for Plaintiff's "Ethics and Professionalism" element submitted by Plaintiff's direct supervisor AUSA Ahn provided in its entirety:

    i.  "Charles has a firm grasp of his ethical and professional responsibility obligations and carries out those obligations. As Charles's productivity in 2019 demonstrates, he has a strong work ethic and readily accepts assignments and volunteers to assist on matters when assistance is sought by his colleagues and supervisors. Last but not least, Charles is forthright in the way he communicates with me and others. It is a pleasure working with him."

27. Inexplicably, on February 8, 2020, AUSA Barron emailed AUSA Ahn and said he was changing Plaintiff's rating for the Ethics and Professionalism Critical Performance Element (CPE) to "Successful." AUSA Barron feigned concern about the volume of old investigations Plaintiff needed to be moved.

28. On or about February 11 or 12, 2020, AUSAs Barron and Ahn attended a meeting with USAO-CDCA management officials, including former U.S. Attorney Hanna, AUSA Wilkison, former AUSA Fox, AUSA Garringer, and the other Santa Ana Branch Office supervisory AUSAs.  Plaintiff is informed and believes that AUSAs Ahn and Barron

continued to recommend that Plaintiff receive an overall "Outstanding" rating. However, AUSAs Ahn and Barron were overruled by USAO-CDCA upper management, specifically former U.S. Attorney Hanna and former Criminal Division Chief AUSA Fox.

29. On or about February 19, 2020, during a meeting with his rating and reviewing officials, AUSA Ahn and AUSA Barron, Plaintiff received a downgraded rating for the Case Handling and Ethics and Professionalism CPEs. Because the Case Handling CPE had been downgraded, the overall PAR rating was also downgraded. Moreover, AUSA Barron substantially altered the write-up of Plaintiff's 2019 PAR addendum drafted by Plaintiff's direct supervisor AUSA Ahn to drastically alter its contents and meaning, adding false, misleading, and pretextual statements.

30. For 2019, Plaintiff was the only AUSA in the entire USAO-CDCA Santa Ana Branch Office who had the overall rating downgraded from "Outstanding" for purported performance-related issues. (Two other AUSAs had their overall rating reduced from "Outstanding" to "Successful," but that was only because they were "rookie" AUSAs, who under USAO-CDCA practices are initially rated "Successful.")

31. In February 2020, AUSA Barron told Plaintiff that AUSA Garringer (whom Plaintiff had admonished about his unlawful discrimination against former Latina AUSA#1) made negative comments about Plaintiff during the review process for Plaintiff's 2019 PAR, which Plaintiff believes subsequently led to Plaintiff's lower PAR ratings for 2019.

32. On June 29, 2020, Plaintiff filed a formal discrimination and reprisal complaint regarding his 2019 PAR, which DOJ-EEO began to investigate, including by issuing questionnaires to USAO-CDCA managers in late 2020. Plaintiff is informed and believes USAO-CDCA managers knew of Plaintiff's discrimination and reprisal pre-complaint earlier in

June 2020.   AUSA Wilkison provided a pretextual justification for the lowered ratings, including Plaintiff's supposed lack of production, which was a false statement.

33. The discrimination and retaliation against Plaintiff not only continued after 2019 and throughout 2020 to present, but also has progressively worsened, culminating in USAO-CDCA managers again issuing one of Plaintiff's ratings in his 2020 PAR as "Successful" instead of "Outstanding," as well as – for the first time in Plaintiff's more than 15 years with the Department – being formally disciplined and issued a Letter of Reprimand (LOR) for alleged unprofessional conduct.  The continued discrimination and retaliation against Plaintiff substantiate that the conduct related to Plaintiff's 2019 PAR was indeed discriminatory, retaliatory, and pretextual.

34. On June 19, 2020, current female Black AUSA#1 presented former United States Attorney Hanna with the first ever Juneteenth memorandum for the USAO-CDCA, entitled "Action Proposals for Racial Justice, Equity, and Inclusion at the U.S. Attorney's Office for the Central District of California".  That memorandum, which was addressed to former U.S. Attorney Hanna, then-FAUSA (now acting U.S. Attorney) Wilkison, and then-Executive AUSA (now Chief AUSA) Christensen, focused on various lingering issues inside the USAO-CDCA, including, *inter alia*, the need for increased discretion for AUSAs in order to ameliorate disparity, using "statistical data to identify and address racial disparities in the Office's cases and employment practices," and creating/hiring a Diversity, Equity, and Inclusion Officer, a Marginalized Communities Fraud Coordinator, and Racial Justice Coordinator positions.  Thereafter, many AUSAs throughout the USAO-CDCA formed and participated in "Racial Justice & Equity" working groups to address the many serious problems highlighted in that memorandum.

35. Beginning in July 2020, Plaintiff began to serve as one of two co-points of contact for the "Statistics and Data" working group of "Racial Justice & Equity" groups formed

pursuant to the Juneteenth memorandum.  Plaintiff believes his participation in this working group led former U.S. Attorney Hanna, former Criminal Division Chief AUSA Fox, AUSA Wilkison, AUSA Garringer, and AUSA Barron to retaliate against Plaintiff by issuing him a 2020 LOR, which ended up also being the main basis for downgrading Plaintiff's Ethics/Professionalism rating in his 2020 PAR.

36. On June 30, 2020, Plaintiff sent an email message to AUSA Barron, with subject "racially insensitive/inappropriate statements by front office," wherein Plaintiff complained about racist statements made by Chief AUSA Stephanie Christensen in 2018 and by former Criminal Chief AUSA Brandon Fox in 2019.  Specifically, the email detailed how during a USAO-CDCA Criminal Division meeting in 2018, AUSA Christensen had mocked a Black USAO employee by stating that he was wearing his "*pimp daddy outfit*," simply because that Black USAO employee happened to be wearing a nice suit.  AUSA Christensen's statement was also incredibly insensitive, given that the USAO-CDCA is responsible for combatting human trafficking, which includes charging pimps, so her insulting statement basically equated a Black USAO-CDCA employee with a criminal defendant – a pimp – simply because that Black employee happened to be wearing a nice suit.  Likewise, Plaintiff's email detailed how former AUSA Fox – then the Criminal Division Chief AUSA responsible for supervising approximately 200 federal prosecutors – had used a racially-charged term to describe the outgoing Criminal Chief AUSA, who was Black, by ridiculing him as the USAO-CDCA's "*Black mamba*."

37. Even though they were present during one or more of those racist comments – and likely were notified afterwards by complaints voiced by other USAO-CDCA AUSAs – neither former U.S. Attorney Nicola Hanna nor AUSA Wilkison did anything to rebuke or rectify those racist statements.

//

//

38. Plaintiff believes that former U.S. Attorney Hanna, AUSA Wilkison, and former AUSA Fox retaliated against Plaintiff for raising that complaint about the racist statements made by AUSA Christensen and former AUSA Fox. Moreover, Plaintiff believes that AUSA Barron also retaliated against Plaintiff for raising that complaint directly to him.

39. In August 2019, former AUSA Fox improperly attempted to access and obtain copies of Plaintiff's emails without Court Order, without formal DOJ approval, and *without due process*.

40. On November 17, 2020, AUSA Barron required Plaintiff to provide preferential treatment to a defense attorney that was AUSA Barron's friend, to which Plaintiff voiced opposition. That was not the first time AUSA Barron appears to have misused his official position for personal benefit, because the previous year, in May/June 2019, in the same weeks when AUSA Barron was being appointed to be the Santa Ana Branch Office Chief AUSA, AUSA Barron was purchasing a personal residence for more than $1,500,000, from a criminal defendant whom the USAO-CDCA – in fact, the Santa Ana Branch Office – was *at that same time* prosecuting and sentencing.

41. On December 3, 2020, AUSA Wilkison imposed formal discipline on Plaintiff by issuing him a Letter of Reprimand ("2020 LOR") dated November 30, 2020, which was the first formal discipline that Plaintiff has ever received during the more than 15 years that Plaintiff has worked for DOJ. Plaintiff believes that AUSA Wilkison issued that 2020 LOR to Plaintiff for pretextual reasons, which was part of the continuing retaliation and discrimination against Plaintiff for his protected EEO activities and associations with persons of protected classes.

42. Not only are the factual allegations in the 2020 LOR false and pretextual, but they also constitute disparate treatment of Plaintiff because AUSA Wilkison failed to issue an LOR

(or even lower the PAR rating) for a similarly situated Santa Ana Branch Office AUSA who had engaged in objectively worse conduct during 2019 (but who had not engaged in protected EEO activities nor had similar associations).  That AUSA's conduct included yelling at and becoming verbally abusive to former U.S. Attorney Hanna and former Criminal Chief AUSA Fox when they notified that AUSA that he had not been selected to be the Chief AUSA of the Santa Ana Branch Office, and subsequently behaving unprofessionally towards his direct Santa Ana Branch Office supervisors during a different meeting about his workload.

43. Moreover, AUSA Wilkison treated Plaintiff disparately to other similarly situated AUSAs by failing to consider lesser sanctions before jumping straight to an LOR, given that during Plaintiff's 15-year service with the Department, he had never been formally disciplined before.  Plaintiff believes that AUSA Wilkison failed to consider lesser sanctions – such as a verbal admonishment, which could have afforded Plaintiff an opportunity to self-correct any alleged issues – because she was continuing the discrimination and retaliation against Plaintiff for his protected associations and prior EEO activities.  Plaintiff believes that AUSA Wilkison has never issued a LOR to an experienced AUSA who had no prior discipline, without at a minimum first meeting with that AUSA to discuss the issues and to give the AUSA an opportunity to improve, before issuing the formal discipline of an LOR.

44. In late 2020 and early 2021, AUSA Barron failed to approve a time-off award for Plaintiff, for which Plaintiff's direct supervisor Santa Ana Branch Office Deputy Chief Daniel Ahn had formally nominated Plaintiff in late 2020 due to Plaintiff's extraordinary performance during the COVID pandemic, including charging 11 cases and 15 defendants during summer 2020 (July-September 2020).  Plaintiff believes that AUSA Barron failed to approve that time-off award nomination – even though such nominations by direct supervisors are routinely approved – due to the continuing discrimination and

COMPLAINT AND DEMAND FOR JURY TRIAL

14

retaliation against Plaintiff for his protected associations and prior EEO activities.  In fact, to avoid having to approve the time-off award nomination submitted for Plaintiff, AUSA Barron denied all of the time-off award nominations submitted by AUSA Ahn, giving the pretextual reason that AUSA Barron did not want the AUSAs to have too much leave, even though in April 2020 (before AUSA Barron had found out about Plaintiff's formal EEO complaint), AUSA Barron had instructed the USAO-CDCA Santa Ana Branch supervisors the opposite: "I would like us to liberally submit time off awards for all AUSAs who contributed to the work of the office during the shelter-in-place."

## FIRST CAUSE OF ACTION

**DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

**(42 U.S.C. § 2000, et seq.)**

**(Against All Defendants)**

45.  Plaintiff realleges and incorporates by reference, as though fully set forth herein, each and every allegation set forth in paragraphs 1 through 44 above.

46.  Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race, color, religion, sex, and national origin. The protections against race and color discrimination extend to persons *associated with* a member of the protected class (*e.g.*, spouses). (*Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361-62 (9th Cir. 1987); *Holcomb v. Iona College*, 521 F.3d 130, 138 (2nd Cir. 2008); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 513 (6th Cir. 2009).)

47.  Additionally, Title VII of the Civil Rights Act of 1964, *as amended*, makes it unlawful for an employer, "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color,

religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

48. The adverse actions against Plaintiff began in 2019 after several officials who were of minority descent were replaced with younger, white males.

49. Defendants discriminated against Plaintiff by subjecting him to the adverse action described above, including but not limited to, giving him lower CPE ratings than previously given as a pretext, failing to provide him feedback prior to the lower ratings, and creating a hostile work environment after he had engaged in a protected activity of defending a female Hispanic AUSA.

50. Plaintiff's associations with his Hispanic partner, mixed-race son, and former Latina AUSA#1 and his defense of former Latina AUSA#1 were the determining factors and/or the motivating factors behind Defendants' actions.

51. By the aforesaid acts and omissions of Defendants, and each of them, Plaintiff has been directly and legally caused to suffer actual damages including, but not limited to, loss of earnings, attorney's fees, costs of suit, and other pecuniary loss not presently ascertained.

52. Plaintiff is informed and believes and thereon alleges that Defendants, by and through their managers, officers, and/or directors committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of plaintiff's rights. Moreover, Defendants and their managers,

officers, and/or directors authorized or ratified the wrongful conduct of their employees and/or are personally guilty of oppression, fraud, or malice. As such, Plaintiff is entitled to recover punitive damages from Defendants under federal law in an amount according to proof.

53. As a result of Defendants' unlawful conduct as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit as provided in 42 U.S.C. § 12205.

### SECOND CAUSE OF ACTION

**RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

**(42 U.S.C. § 2000, et seq.)**

**(Against All Defendants)**

54. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 53, above.

55. Section 704(a) of Title VII of the Civil Rights Act of 1964, *as amended*, prohibits employers from discriminating against an employee "because [he] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

56. As set forth in detail above, Plaintiff made informal and formal complaints to Defendants' agents and employees opposing Defendants' unlawful, discriminatory employment practices based on race and/or national origin.

57. As a result of Plaintiff's complaints, Defendants' agents and employees took materially adverse actions against Plaintiff, including, but not limited to, issuing disciplinary

warnings, reprimands by supervisors, and lower performance ratings as set forth in detail above.

58. Defendants' adverse actions constituted retaliatory and discriminatory workplace practices in violation of Title VII.

59. Defendants' retaliatory actions were sufficient to deter a reasonable person from engaging in a protected activity under Title VII.

60. Plaintiff is informed and believes and thereon alleges that Defendants, by and through their managers, officers, and/or directors committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights. Moreover, Defendants and their managers, officers, and/or directors authorized or ratified the wrongful conduct of their employees and/or are personally guilty of oppression, fraud, or malice. As such, Plaintiff is entitled to recover punitive damages from Defendants under federal law in an amount according to proof.

61. Plaintiff is entitled to his reasonable attorneys' fees and costs of suit.

## **PRAYER**

WHEREFORE Plaintiff demands judgment as follows:

1.    For special damages according to proof, back pay, deferred compensation, medical benefits and other employment benefits;

2.    Injunctive relief;

---

COMPLAINT AND DEMAND FOR JURY TRIAL

3.    For general damages, including but not limited to, emotional distress, according to proof;

4.    For prejudgment interest on lost wages and benefits;

5.    For punitive damages according to proof;

6.    For costs incurred by Plaintiff, including reasonable attorneys' fees and costs of suit, in obtaining the benefits due Plaintiff and for violations of Title VII, as set forth above; and

7.    For such other and further relief as the court deems just and proper.


Dated:  July 28, 2021

                                    WEST COAST EMPLOYMENT LAWYERS, APLC



                           By:      */s/ Ronald L. Zambrano*
                                    Neama Rahmani
                                    Ronald L. Zambrano
                                    Attorneys for Plaintiff
                                    CHARLES PELL

## **DEMAND FOR JURY TRIAL**

        Plaintiff hereby demands trial by jury.


Dated:  July 28, 2021            WEST COAST EMPLOYMENT LAWYERS, APLC



                           By:      */s/ Ronald L. Zambrano*
                                    Neama Rahmani
                                    Ronald L. Zambrano
                                    Attorneys for Plaintiff
                                    CHARLES PELL